State v. Tutt.

———o———

STATE OF MISSOURI, Defendant in Error, *vs.* REUBEN TUTT, Plaintiff in Error.

1. *Crimes and punishments—Opening window without bursting or breaking, burglary in the second degree.*—Under a proper construction of the statute (Wagn. Stat., 455, § 11), the entering of a dwelling house by raising a window without breaking or bursting it constitutes burglary in the second degree.

*Error to Cooper Circuit Court.*

*John R. Walker*, for Plaintiff in Error, cited; Wagn. Stat., 454, § 10; State vs. Alexander, 56 Mo. 131; State vs. Wyatt, 50 Mo. 309; State vs. Bryant, 55 Mo. 75; Camden Turnpike

vs. Fowler, 4 Zabr. 205 ; Dutcher vs. State, 18 Ohio, 308 ; 1 Bishop Crim. Law, 3rd Ed. § 328.

*Hockaday*, *Att'y Gen'l*, for Defendant in Error, cited: Wagn. Stat. 454–5, §§ 10, 11, 12.

HENRY, Judge, delivered the opinion of the court.

At the November term, 1875, of the Cooper Circuit Court, the defendant was indicted for burglary. The following is a copy of the indictment :

" The grand jurors for the State of Missouri, summoned from the body of Cooper county, upon their oaths present, that Reuben Tutt, Anthony Porter, and George Bland, on the 6th day of May, 1875, at the county of Cooper and State of Missouri, did feloniously and burglariously break into and enter a certain dwelling house being then and there the property of one John L. O'Bryan, and in which there was at the time of said breaking and entering, human beings, to-wit, the said John L. O'Bryan and his family, by forcibly breaking, opening and raising a window of said dwelling house, with intent then and there to commit a larceny, by then and there feloniously stealing, taking and carrying away the goods, chattels and personal property and valuable things of the said John L. O'Bryan, to-wit: one gold watch of the value of one hundred and fifty dollars, one pair of boots of the value of seven dollars, two coats of the value of five dollars, and two pairs of pants of the value of three dollars, one gold keystone of the value of thirteen dollars, one seal stone of the value of thirty dollars, and one steel watch-key and ring of the value of ten cents, all of the goods, chattels and personal property and valuable things of the said John L. O'Bryan, then and there being found in said dwelling house, and they, the said Anthony Porter, Reuben Tutt, and George Bland, did then and there feloniously steal, take and carry, contrary," etc.

There was a second count in the indictment in all respects similar to the first, except in charging the entry into the house to have been through and by an open window of said dwelling house, and that the defendant committed a larceny therein, by then and

there stealing, taking, and carrying away the goods therein described (the same goods described in the first count), and that having committed a larceny they did then and there feloniously and burglariously break and get out of said dwelling house by then and there feloniously and burglariously breaking and opening an outer door of said dwelling house.

To this indictment defendant filed his plea of *autrefois acquit*, on which as to the first count in said indictment, and as to the charge of larceny in the second count, the finding was for defendant, and he was as to said first count and the charge of larceny in the second count discharged; and afterwards, on the same day, he was tried on the second count for burglary in the second degree, convicted, and his punishment assessed at four years imprisonment in the penitentiary. It appears from the record that there was a motion for a new trial filed by defendant, which was overruled, but it is not preserved in the bill of exceptions.

The judgment of the court was in accordance with the verdict, and from that judgment defendant has appealed to this court.

The evidence for the State was substantially, that on the 6th of May, 1875, the house of John L. O'Bryan was entered through a window, into the dining-room, and from the dining-room, through a door into the apartment where O'Bryan and his son were sleeping, and the articles mentioned in the indictment taken and carried away; that the burglars escaped by a door leading from a hall out of the house. This door was locked at night but found unlocked in the morning. The window of the dining-room was down at night when O'Bryan retired to bed, but was not fastened, and the shutters to the window were open, but in the morning the window was up. O'Bryan was aroused by the burglars and heard their exit at the back door.

The watch which was taken was given to one of the witnesses by the defendant, and the ring and watch-key taken were found in possession of defendant, and he admitted to the sheriff, Rogers, when he was arrested in St. Louis, that the steel watch-key was then in his possession, but said he " he did not care a damn, as

they couldn't send [him] to the penitentiary for stealing a watch-key."

Another witness testified to having heard a conversation between defendant and Sallie Mason, in which defendant told Sallie Mason that he raised the window and went into the house. Defendant offered no evidence, and thereupon for the State, the court instructed the jury as follows:

"1st. If the jury believe from the evidence that the defendant, on or about the 6th day of May, 1876, at the county of Cooper, and State of Missouri, entered the dwelling house of one John L. O'Bryan, in which there were at the time human beings, with the intent to commit a larceny by stealing and carrying away the property of the said John L. O'Bryan, then and there being in said house by going through a window in said house, and after being in said house with intent aforesaid, did break and get out of said house by then and there breaking and opening an outer door of said dwelling house, they will find the defendant guilty of burglary in the second degree, and assess his punishment at imprisonment in the penitentiary for a period of not less than three years."

"2nd. The jury are instructed that the mere unlocking or opening of a door is a breaking, within the meaning of the statute."

"3rd. If the jury believe that soon after the commission of the 'burglary charged in the second count, any portion of the property taken at the time of the burglary, was found in the possession of the defendant, such possession will be presumptive evidence of defendant's guilt, and if such possession of said stolen property is not satisfactorily explained by the defendant, it will be conclusive evidence of his guilt, and the jury are further instructed that it devolves upon the defendant to explain such possession."

"4th. The jury are instructed that if from all the evidence in the case they have a reasonable doubt of defendant's guilt, they will acquit, but such a doubt to authorize an acquittal must be a real and established doubt of defendant's guilt, and not a mere possibility of his innocence."

To the first and third of these instructions the defendant objected and saved his exceptions.

The defendant asked the following, which were refused, and saved his exceptions to the refusal to give them.

We state their substance only. The first was to the effect that if defendant broke into and entered the dwelling house by raising a window of said house, the jury should acquit. The second was in substance that in order to convict defendant the jury must find that he broke into and entered the house in some other manner than by forcibly bursting or breaking the wall or outer door, window or shutter of a window of the house, or the bolt or lock of such door, or the fastening of such window or shutter. The third was that if defendant broke and entered into said house, either by forcibly bursting or breaking the wall or outer door, window or shutter of a window of said house or the lock or bolt of such door, or the fastening of such window-shutter, the defendant was guilty of burglary in the first degree, and should be acquitted. The fourth was that if defendant broke into and entered the dwelling-house by forcibly bursting or breaking a window, then the jury should acquit him.

Wagn. Stat., 454, § 10, provides that "every person who shall be convicted of breaking into and entering the dwelling house of another in which there shall be at the time some human being, with intent to commit some felony or any larceny therein, either first, by forcibly bursting or breaking the wall or outer door, window or shutter of window of such house, or the lock or bolt of such door, or the fastening of such window or shutter; or second, by breaking in any other manner, being armed with some dangerous weapon, or with the assistance and aid of one or more confederates then actually present, aiding and assisting; or third, by unlocking an outer door by means of false keys or by picking the lock thereof, shall be adjudged guilty of burglary in the first degree."

The eleventh section provides that "every person who shall be convicted of breaking into a dwelling house, with intent to commit a felony or any larceny therein, but under such circumstances as shall not constitute burglary in the first degree, shall be deemed guilty of burglary in the second degree."

The defendant's theory, it will be perceived from his refused instructions, is that the entry of a dwelling house by raising a window, without breaking or bursting it, constitutes the crime of burglary in the first degree, and as there was no evidence that defendant entered in any other manner, he could not be convicted of burglary in the second degree.   By the common law, burglary was the breaking and entering the dwelling house of another in the night time, with intent to commit a felony therein.

"The mere lifting of a latch and so opening a door not otherwise fastened, or pushing upward or lowering a window sash which is held only by a wedge or pulley weight, or raising a trap door meant to be kept down merely by its own gravitation, or procuring by craft, or by threats and intimidation, a person within the house to open the door, is, in legal contemplation, a breaking." (1 Bish. Crim. Law, 327.)

"To knock at the door, and upon opening it, to rush in with a felonious intent, was burglarious, though there was no actual breaking." (4 Blacks. 226.)

The tenth section of our statute uses the words applicable to burglary at common law, "breaking into and entering," but makes the degree of burglary depend upon the manner in which the breaking and entering is accomplished.   If "by forcibly bursting or breaking the wall," etc., it is burglary in the first degree.

The second and third clauses of that section are useless if the defendant's construction be the correct one, that every breaking and entering is embraced in the first clause.   There would then have been no necessity for providing that breaking, in any other manner, being armed with some dangerous weapon, or by unlocking the door with false keys, or picking the lock, should also be burglary in the first degree ; for as we have already seen, at common law, breaking into a dwelling house in either of these modes was a forcible breaking.

In the case of Ducher vs. The State (18 Ohio, 308), cited by defendant, it was held that one who went to a dwelling house with intent to commit a felony therein, and knocked at the door, and the same being opened to him from within, entered and com-

mitted a felony, was guilty of burglary, under a statute of that State which declared burglary to be the malicious, wilful and forcible breaking and entering into a dwelling house, etc. ; that the use of the word "forcibly" in that statute had made no change in the common law, and required no more to constitute the crime of burglary than the common law required.

It is evident, however, that our statute did intend to make a change, not that any entering and breaking, which at common law was burglary, is not still burglary under our statute ; but those cases of breaking and entering at common law, which were effected in other modes than those specified in the tenth section, are now burglary in the second degree under the eleventh and succeeding sections of the statute. An indictment for burglary in the first degree under the tenth section must state, not only the breaking and entering into a dwelling house in which at the time there was a human being, with intent to commit some felony or larceny, but that such breaking and entering was effected in one of the modes specified in that section. The manner of the breaking into a dwelling house is one of the ingredients of burglary in the first degree.

We are here confronted with the case of the State vs. Alexander ( 56 Mo. 131). The indictment in that case charges substantially that defendant " with force and arms, about the hour of one of the clock on the night of the same day, the dwelling house of one Clemens Harig, there situate and being, and in which there was at the time a human being, feloniously and burg-lariously did forcibly break and enter with the intent the goods and chattels in the said dwelling house, etc., to steal, take and carry away, etc." The court, Wagner, J., held that the indictment " set forth all the facts which constitute the crime of burglary in the first degree."

The tenth section of our act was copied from a New York statute, which has in that State received a judicial construction. In the People vs. Fillinger ( 24 How. [N. Y.] 341), the court held that an indictment for burglary in the first degree, under the statutes of which ours is a copy, was fatally defective if it omitted to state the mode of breaking into the dwelling house. " The

mode of breaking into the house (Ingraham Pres. Justice) as stated in the statute, is just as necessary to be proved to make out the offense as that it was in the night time, or that there was at the time a human being in the house. Without proof of one of the modes of entering the house, the offense is only burglary in the second degree."

In the case of the People vs. Bush (3 Parker's Crim. Rep. 553), the court held that "to constitute burglary in the first degree, there must be forcibly bursting or breaking the wall or an outer door, window, or shutter of a window, or the lock or bolt of such door, or the fastening of such window, or breaking in any other manner, being armed with some dangerous weapon, or with assistance and aid of one or more confederates, then actually present, or by unlocking an outer door by means of false keys, or by picking the lock thereof. In this case there was neither. The forcibly bursting or breaking an outer door means, in common parlance, more than merely lifting a latch. That the first subdivision of the tenth section must have designed something further, is apparent from the third subdivision, which provides that unlocking an outer door by means of false keys or picking the lock thereof, shall be a sufficient breaking to constitute burglary in the first degree. The provision would have been wholly unnecessary, if simply unlatching the door would have been deemed bursting or breaking it within the meaning of a former part of the same section."

We are satisfied that the construction which the New York courts have given the statute under consideration is the correct one, and that, as the indictment in the case at bar was for burglary in the second degree, and the evidence sustained that charge, and no other, and the instructions given by the court were in relation to that degree of the offense, and those asked by defendant and refused, were as to burglary in the first degree, the court committed no error in giving or refusing instructions, and with the concurrence of the other judges, the judgment is affirmed.

OCTOBER TERM, 1876, JEFFERSON CITY, CONTINUED IN VOL. LXIV.