The State v. Hecox.

---

THE STATE v. HECOX, *Appellant.*

1. **Criminal Law** : BURGLARY: CURTILAGE. Curtilage as used in our statute in relation to burglary, R. S., sec. 1297, means an enclosed space immediately surrounding the dwelling house and contained within the same inclosure.

2. ———: ———: ———. Under an indictment under R. S., sec. 1297 for burglary of a granary in which there were goods and valuable things and larceny therein, it is immaterial whether or not the granary is within the curtilage of the dwelling house.

83 531
46a 393

83 531
111 264
112 438

83 531
117 404

83 531
133 117

83 531
146 41

83 531
e179 2284

The State v. Hecox.

3. **Indictment**: GRAND AND PETIT LARCENY. Where one is tried on an indictment containing counts for both burglary and larceny, and is acquitted of the burglary only, he will be guilty of grand or petit larceny according to the value of the property stolen.

4. **Larceny**: ASPORTATION. The taking of wheat from its place in a granary and filling it into sacks and tying the latter is a sufficient asportation to constitute larceny, if done with the felonious purpose of stealing the wheat.

5. **Burglary**: BREAKING. The opening of a door which is closed and fastened with a chain hooked over a nail is a sufficient breaking to constitute burglary, if done with the intent to steal and carry away property, and is followed by an entry of the building to which the door belonged.

6. **Instructions**: ASSUMING FACTS. Instructions which assume material facts are erroneous, unless given in connection with another which leaves it to the jury to determine whether the assumed facts are true.

*Appeal from Clark Circuit Court.*—HON. JOHN C. ANDERSON, Judge.

REVERSED.

*Hagerman, McCrary & Hagerman* for appellant.

Appellant cannot be convicted on this indictment because (1) the building alleged to have been burglarized was within the curtilage of a dwelling house and no such crime is charged. *Koster v. People*, 8 Mich. 431; *Byrnes v. People*, 37 Mich. 515; *Beckford v. People*, 39 Mich. 209; *Gibson v. State*, 54 Md. 447; *Thralls v. State*, 21 Ohio St. 233; *Conner v. State*, 14 Mo. 561; *State v. O'Brien*, 74 Mo. 549. (2) The indictment charges no offence, a granary not being the subject of burglary, unless within the curtilage or used for the purpose of one of the buildings named in section 1298, which latter fact is not charged. *City of St. Louis v. Laughlin*, 49 Mo. 559; *State v. Pemberton*, 30 Mo. 376; *State v. Blan*, 69 Mo. 317; *Bigelow v. Forrest*, 9 Wall. 339; *State v. McGarry*, 21 Wis. 496; Bishop on Statutory Crimes,

(2nd Ed.) § 245; *Reg. v. Reed*, 28 E. L. & E. 133.   (3) There was entire failure of proof of venue, which is fatal to the State's case.   *Gordon v. State*, 4 Mo. 375; *State v. Meyer*, 64 Mo. 190; *State v. Miller*, 71 Mo. 89; *State v. Burgess*, 75 Mo. 541.   (4) The court erred in giving instructions number four and five for the state, because in instruction number four it is assumed that the wheat was taken from its place in the granary, filled into sacks and the sacks tied, and in instruction number five it is assumed the door was closed with a chain hooked over a nail and then opened, and that all these acts were done by defendant, when these facts were in dispute and should have been put to the jury hypothetically.   (5) The court erred in not instructing the jury as to petit larceny as well as burglary, and in not telling the jury that under the indictment they could find the defendant guilty of burglary, or of both burglary and larceny, or of petit larceny.   In instruction number seven for the state the court gave the jury the form of verdict for burglary and for burglary and larceny, and for not guilty, but erred in not giving a form for petit larceny.   And in this connection the court erred in not giving instructions numbers one and two asked by defendant as to petit larceny.   (6) The court erred in refusing instruction number four asked by defendant, and in not instructing as to an *alibi*.   (7) The court erred in rendering judgment upon and in not arresting the verdict, because it does not separately assess the punishment.

*D. H. McIntyre*, Attorney General, for the state.

(1)   There was sufficient proof of the breaking and entry.   Hale P. C. 552; Bishop Stat. Crimes, § 312. The wheat had been put into the sacks and the latter tied.   This put the wheat in the possession of the thief and completed the asportation.   3 Greenlf. Ev., sec. 154; 1 Mood. C. C. 14; Kelly C. L., § 610.   (2) The indictment charges the offence of burglary in the second degree, and is within the provisions of the second sub-

division of sec. 16, G. S., chap. 201. *State v. Henley*, 30 Mo. 509. The evidence shows the granary was without the curtilage of the dwelling house. *Com. v. Barney*, 10 Cush. 480; *People v. Gidney*, 17 N. Y. Sup. Ct. 151. (3) The objections to the state's instructions are not well founded, while those asked by defendant were either embraced in those given or were incorrect, and hence should not have been given. Defendant's fourth instruction raising the question of an *alibi* was rightly refused. *State v. Vincent*, 24 Ia. 570; *State v. Northup*, 48 Ia. 583; *State v. Red*, 53 Ia. 69; *State v. Reitz*, 83 N. C. 634; *Wade v. State*, 65 Ga. 756.

BLACK, J.—The first count of the indictment charged the defendant with breaking and entering on October 15, 1878, "a certain building, that is to say a certain granary of Archibald Boyles," etc. The second is like the first, and, in addition, charged him with stealing three and one-half bushels of wheat of the value of three dollars. He was found guilty of both charges.

The evidence tended to show that the granary was inside of Boyles' farm lot and separated from the dwelling house yard by a fence; that there was a well in the farm lot used for family purposes, which was reached by a gateway in the fence; that the granary was used for storing wheat, tobacco and farm implements, and had a door on one side, which was fastened by a chain attached to the door and hooked upon a nail in the side wall, and a window on the other, which opened from the inside. A witness who lived with Boyles testified, in substance, that before supper he was in the granary and fastened the door when he went out; that afterwards, between seven and eight o'clock, he went to the well and there saw the door move; that he then fastened the door and on discovering that some one was inside he ran to the house, got a gun, went back, and demanded of the person on the inside to make himself known; that the defendant was there endeavoring to get out of the win-

dow, and begged the witness not to inform on him, for he was hard up. Two sacks were found in the granary partly filled with wheat and tied up. There was evidence tending to show that defendant borrowed these sacks from a mill in the vicinity, and on the other hand, there was evidence tending to show that Boyles borrowed these sacks from a neighbor. There was, also, evidence to the effect that defendant was at the house of one Hughes, some five miles distant, when the burglary was said to have been committed.

1. It was urged below and is insisted here that the first count of the indictment charged no offence known to the law, because the granary was within the curtilage of the dwelling house and is not .so described, and that the second count only charged the defendant with petit larceny. It is true that the statute, now sec. 1297, R. S., limits the common law definition of a dwelling house, as was understood in this class of cases, by providing that "no building shall be deemed a dwelling house, or any part of a dwelling house * * * unless the same be joined to, immediately connected with, and is a part thereof." Sec. 1298 declares: "Every person who shall be convicted of breaking and entering, first, any building within the curtilage of a dwelling house, but not forming a part thereof; or, second, any shop, store, booth, tent, warehouse or other building * .* * in which there shall be at the time some human being, or any goods, wares, merchandise or other valuable things kept or deposited, with intent to steal or commit any felony therein, shall, on conviction, be adjudged guilty of burglary in the second degree."

The argument is, that the first clause of this section embraces all those outbuildings formerly regarded as part of the mansion, and that they are not included in the second clause. At common law the dwelling house, in which burglaries might be committed, was held to include the outhouses, such as warehouses, barns, stables, cowhouses, or dairyhouses, though not under the

same roof, provided they were parcel thereof. 4 Black. Com., 225; 1 Hale P. C., 553; 2 Russell on Crimes (9 Ed.) 15. In determining what buildings were under the protection of the mansion house, it was important to determine whether they were within the curtilage, or some common enclosure, but this was not the only criterion, for if within the curtilage, and a distinct structure, used for purposes not connected with housekeeping, they were not parcel of the mansion. *Armour v. The State*, 3 Hump. 379. So, "if the outhouses be adjoining the dwelling house and occupied as parcel thereof, though there be no common enclosure or curtilage, they will be regarded as part of the mansion house." 2 East P. C. 492. The elements of proximity and use, were equally important in determining when an outhouse was to be regarded as parcel of the mansion. 1 Wharton Crim. Law, (8 Ed.) 783; Bishop on Stat. Crimes, secs. 283, 286.

The question, therefore, still remains in the application of our statute, what is to be understood by the curtilage. Tomlin and Jacobs, in their law dictionaries, do not allow the elements of enclosure to enter into the definition, but in Bouvier's Law Dictionary the definition given is "the enclosed space immediately surrounding a dwelling house, contained within the same enclosure;" so, also, "a yard, court yard, or piece of ground lying near to a dwelling house, and enclosed within the same fence." Burrill's Law Dic.; Webster's Dic. It is in this sense the word is used in our statute. See, also, *Commonwealth v. Barney*, 10 Cush. 480; *People v. Parker*, 4 Johns. 424; *People v. Gedney*, 17 N. Y. Sup. Ct. 151.

There is another view of this case, which must dispose of these questions, as they are presented upon this indictment. The sections of the statute above quoted became a part of the criminal code of this state by the act of March 20, 1835. There it was necessary that the breaking and entering should have been done "in the night time," and another section made it burglary to do a like

act in the day time. In the revision of 1855 these words were omitted and as a consequence the section, also, with respect to burglary in the third degree. A consideration of these statutes will show that the words "in which there shall be," etc., are descriptive of the buildings and structures mentioned in the second subdivision of section 1298 and do not apply to those in the first. This must be so, for as we have seen the buildings and structures specifically mentioned in the second part of that section may be, and often are within the curtilage. It is, therefore, immaterial, in this case, whether the granary was, or was not, within the curtilage of the dwelling house. This result is in harmony with the former rulings of this court. *State v. Henley*, 30 Mo. 509 ; *State v. Dooly*, 64 Mo. 146 ; though the questions now urged were not there considered.

2. This cause was tried on the theory that if defendant was found guilty of larceny, he must, also, be found guilty of burglary. In other words the larceny charged, and for which alone he could be convicted was incidental to the burglary. This was a mistaken view of the law. They are two distinct offences though joined in the same indictment on different counts. *State v. Kelsoe*, 76 Mo. 505 ; *State v. Martin*, 76 Mo. 337 ; *State v. Owens*, 79 Mo. 620. If acquitted of burglary and found guilty of larceny, the larceny would be grand or petit according to the value of the property stolen. *State v. Barker*, 64 Mo. 282. The jury were properly informed as to what their verdict should be if they found the defendant guilty of burglary and if they found him guilty of both burglary and larceny, but they should have been further told that they could acquit of burglary and find defendant guilty of larceny ; in which event the larceny would be petit larceny only under this indictment.

3. The first instruction given at the instance of the state was not objectionable for any of the reasons urged. It simply pointed out the offences with which defendant was charged using substantially the language

of the indictment omitting the name only. It was not intended to be an instruction informing the jury what facts they must find in order to find him guilty. The fourth and fifth instructions were as follows:

4th. The taking of wheat from its place in the granary and filling the same into sacks, and the tying of the sacks so containing such wheat, is a sufficient carrying away to constitute larceny within the meaning of the indictment, if such acts be done with the felonious and unlawful purpose of stealing such wheat.

5th. The opening of a door which is closed and fastened with a chain hooked over a nail is a sufficient breaking to constitute burglary within the meaning of this indictment, provided such breaking is done with the intent to steal and carry away property, and is followed by an entering of the building to which such door belonged.

As definitions of what would constitute a sufficient breaking and carrying away, they are not objectionable, and might well have been given in connection with an instruction which left it to the jury to determine whether the facts assumed were true, but it was error to submit the most material facts in this way only, by assuming the testimony with respect thereto to be true. The court, at the instance of the state, gave a general instruction as to reasonable doubt, and another at the instance of the defendant of which he cannot complain; these covered the entire cause, and the court did not err in refusing to instruct that if the evidence touching an *alibi* was sufficient to raise a reasonable doubt of guilt the jury should acquit. The first, second and sixth asked by the defendant were also properly refused.

The point now made as to proof of the venue will not be overlooked on another trial. Reversed and remanded.