THE STATE v. SCHIELLER, *Appellant.*

### Division Two, November 19, 1895.

1. **Criminal Law**: INDICTMENT: MURDER: MALICE AFORETHOUGHT: MALICE AND PREMEDITATION. An indictment for murder, which omits the element of "deliberation" and alleges that the act was done "with malice aforethought," charges murder in the second degree, the words "with malice aforethought" being the legal equivalents of "with malice and premeditation."

2. ———: ———: ———: ELECTION. The state may elect to indict for murder in the second degree in the first instance, or, having indicted the accused for murder in the first degree may waive prosecution for that degree on the trial and prosecute for murder in the second degree, and in either case the court may properly instruct as to the lower degree.

3. ———: PRACTICE: VERDICT. A defendant can not be heard to complain that the evidence shows him to be guilty of a higher degree of crime than that of which he was convicted.

4. ———: ———: INSTRUCTIONS: EXCEPTIONS. Where on a trial for murder, the court instructed as to murder in the second degree and manslaughter in the fourth degree, the defendant can not, on appeal, be heard to complain that the court failed to instruct on manslaughter in the third degree, in the absence of a request for such an instruction.

*Appeal from St. Louis Criminal Court.*—HON. HENRY L. EDMUNDS, Judge.

AFFIRMED.

*Chas. T. Noland* for appellant.

(1) All the testimony showed either murder in the first degree, or manslaughter in the third or fourth degrees. The fact that the indictment charged murder in the second degree, did not warrant the court to instruct for that grade of homicide, unless there was evidence tending to sustain it. Instructions should be

confined to the case made out by the testimony. *State v. Lewis*, 118 Mo. 79; *State v. Brady*, 87 Mo. 142; *State v. Wilson*, 88 Mo. 13. The indictment did not permit an instruction for murder in the first degree, and the evidence did not permit an instruction for the second degree; but both the indictment and the evidence warranted instructions for manslaughter. (2) The instructions do not properly define murder in the second degree, and the jurors could not have had any clear perception of the crime of which they convicted appellant. The instructions say: "Premeditation means thought of beforehand for any length of time however short;" and that's all that is said in definition of that distinguishing element of murder in the second degree. *State v. Wieners*, 66 Mo. 13; *State v. Curtis*, 70 Mo. 594; *State v. Sharp*, 71 Mo. 218; *State v. Robinson*, 73 Mo. 306. (3) It was error to instruct under the facts in this case that the law presumed murder in the second degree, from the fact of intentionally killing with a deadly weapon. *State v. Wing*, 66 Mo. 181. (4) The court erred in not instructing for manslaughter in third degree. The aforesaid instructions, recognized the fact that there was evidence tending to show that the homicide was done with a dangerous weapon and was unintentional, that is to say, without a design to kill. Under such circumstances section 3471 requires an instruction for manslaughter in third degree. *State v. Elliott*, 98 Mo. 150.

*R. F. Walker*, attorney general, and *C. O. Bishop* for the state.

(1) A number of the grounds assigned for reversal in the motion for new trial are not sustained by the record, and hence will not be considered here. *State v. Foster*, 115 Mo. 448; *State v. Welsor*, 117 Mo. 570;

*State v. Cantlin*, 118 Mo. 100. *First*. There is no affidavit of newly discovered evidence. *Second*. There is no evidence of any misconduct on the part of the jury. *Third*. There was no testimony admitted on the part of the state over the objection of appellant to which exceptions were saved. (2) The state is not required to call as witnesses all persons who were present at a homicide, nor even all of those whose names are indorsed upon the indictment. *State v. Kilgore*, 70 Mo. 546; *State v. Eaton*, 75 Mo. 586; *State v. Johnson*, 76 Mo. 121. (3) The instructions fully covered the law of the case as developed by the evidence, defined in often approved language the offenses which that evidence tended to show, and were correct in every particular. As to those given at appellant's instance, even if erroneous, he can not now be heard to complain. R. S. 1889, sec. 4115.

SHERWOOD, J.—The defendant appeals from a judgment on a verdict of guilty of murder in the second degree, his punishment being assessed at ten years in the penitentiary. The indictment charges the murder to have been done with a knife, and that defendant did the stabbing "feloniously, willfully and of his malice aforethought."

The testimony in this cause is excessively voluminous, covering over three hundred and twenty pages, most of them typewritten, showing very plainly the abuses which stenography has introduced into our practice.

Going through the record, however, we find the substance of the evidence is the following: The person killed was named August Kanker, and young man twenty-three years old, who on January 3, 1893, married Mary Scheller, a young woman not quite nineteen, to whom he had been engaged about a year. Pending

their engagement, Miss Scheller resided on Second and Miller streets. The defendant visited in that neighborhood, became acquainted with her and proffered her some attentions. Shortly before the marriage, on one Sunday evening, he met her and proposed a walk with her. She declined. Whereupon he said to her: ''You'll feel sorry for this some day. I'll fix the man you'll marry.''

On the night of Saturday, May 13, 1893, there was a party given in honor of Mrs. Kanker's father's birthday, at his residence, 1811 South Second street, in St. Louis, and the deceased and his wife were there. The family lived upon the second floor of a tenement house, occupying two rooms, a hall and a porch. The party was prolonged into the morning of Sunday, May 14. The defendant was not invited, but came to the party with some young men from North St. Louis, where he resided, among whom were Charles and John Meixner, cousins of Mrs. Kanker, nephews of her mother. Until that evening, Mrs. Kanker had not met defendant since he made the threatening remarks above quoted. She spoke to him pleasantly, but he made no response. He was, however, very attentive to her husband, the deceased, following him around, inviting him to sing with him, and making himself very agreeable. Early on Sunday morning, about 1 o'clock, or half past, the musicians who had been furnishing entertainment for the party withdrew, and soon after defendant became turbulent and offensive, criticising the refreshments, acting in a rude and boisterous manner, "and a kind of sassing everybody." Presently a fight began between some young men over the comparative prowess of the "North St. Louis" and the "South St. Louis" boys.

The deceased had been taken ill and was sitting out on a porch upon the stairway leading to the third

floor, with his wife, when the trouble began; he had commenced to vomit, and she started to get a vessel for him when she discovered through a window a difficulty within and gave an alarm; deceased got up and went into the room and undertook to separate two of the combatants, his wife's brother and her cousin, taking hold of each of them by the shoulder, and saying something to them to the effect that relatives ought not to fight with each other. Just then, the defendant, who was engaged with one Weitzel, made a lunge at the deceased with a knife and immediately ran off; it was then discovered that deceased was badly cut in the breast, he was taken to a doctor's office, weak and nearly collapsed, and thence sent to the city hospital, where he died from the wound on Tuesday, May 16, at 1:45 A. M. The wound was a stab, two and one half inches long externally, below the right nipple, penetrating the thoracic cavity and bursting the tip of the lower lobe of the right lung, causing profuse internal hemorrhage. The cause of the death was traumatic pneumonia, induced by this knife wound, of the chest and lung. Defendant was arrested by police officers at his home in North St. Louis, between 4 and 5 o'clock on Sunday morning, May 14. Admitted that he had been at the party and had been in a fight; had been hit with a beer glass, but denied that he had cut anyone; no weapon was found upon him, and there was no trace of blood upon his clothing.

The testimony on the part of the defense tended to show that defendant was a young man of good character; that he was not in the habit of carrying a knife; that on the Sunday morning at the close of the party there was a general row, in which a number were engaged, blows struck all around, weapons used, and that all the parties were more or less the worse for liquor; that the South St. Louis boys had undertaken to beat

the North St. Louis boys, and during the general engagement deceased was cut by some unknown party. Depositions taken at the coroner's inquest, and other testimony, were introduced to contradict and impeach the witnesses for the state.

Defendant testified in his own behalf, and stated that being invited by the Meixner brothers to attend the party, he accompanied them to the house; that he was not acquainted with deceased, having been simply introduced to him on a former occasion, but had known his wife a year and a half; had never paid her any attention, never asked her to take a walk with him, and had never at any time made the threat alleged, that he would fix the man she would marry; that after the musicians had gone away, about 12:30 A. M., a fight sprang up, he was struck upon the back of the head, but by whom he did not know, fought a little to protect himself, and at the first chance he got he ran away; that he had no knife at all at the time, and never owned a knife, and neither cut nor attempted to cut any person that night.

The court instructed on murder in the second degree, on manslaughter in the fourth degree (on the theories of both intentional and unintentional killing), good character, competency of a defendant as a witness, credibility of witnesses, and reasonable doubt. These instructions pursued forms approved by this court.

The indictment charged murder in the second degree, which is murder at common law. If the element of "deliberation" is left out of the definition of murder in the second degree, the words "with malice aforethought" are the legal equivalents of "with malice and premeditation." *State v. Lowe*, 93 Mo. 547.

And it was competent for the state either to elect to indict defendant for murder in the second degree in

the first instance, or having indicted him for murder in the first degree, to waive that degree on the trial and proceed to his prosecution for the crime in the second degree. *State v. Talmage*, 107 Mo. 549; *State v. Moxley*, 115 Mo. 644.

As it was competent for the state to strike off from the charge of guilt a higher and more aggravated portion of the crime, and to prosecute for a less degree of criminality, so it was competent also for the court properly to instruct as to such lower degree. The first right necessarily includes the second, and defendant is in no position to complain that the evidence showed that he was guilty of murder in the first degree, and therefore should have been prosecuted for that offense, since the lesser degree was included in the higher degree, and contained all of the elements of the latter but that of deliberation. *State v. Moxley, supra; State v. Lowe, supra;* R. S. 1889, secs. 3949, 3950, 4104, 4115, 4227.

It is claimed that an instruction should have been given on manslaughter in the third degree, but of this claim it is enough to say that defendant, at the time the other instructions were given, should have excepted because of the failure of the court to instruct upon all questions of law arising in the case, etc. *State v. Cantlin*, 118 Mo. *loc. cit.* 111; *State v. Paxton*, 126 Mo. *loc. cit.* 515.

It is unnecessary and, indeed, would be improper, in the circumstances mentioned, to rule the point whether the evidence warranted an instruction on the third degree of manslaughter. These views result in affirming the judgment. All concur.