## THE STATE v. SOLOMON WILSON, Appellant.

### Division Two, February 12, 1910.

1. **BURGLARY: Information: Removing Screen: Second Degree.** An information which does not charge in the terms of the statute any of the modes of breaking and entering specified in section 1880, Revised Statutes 1899,' but simply alleges the forcible removing of a wire screen of an outer window of said dwelling-house, does not charge burglary in the first degree, but burglary in the second degree; and hence, evidence that defendant was found in the dwelling-house and that a screen had been removed, establishes burglary in the second degree.

2. ———: **Evidence of Higher Offense: Conviction of Lower Degree.** Even if it be conceded that the evidence tends to establish the offense of burglary in the first degree, it is very questionable whether defendant can complain that he was convicted of burglary in the second degree.

3. ———: **Larceny: Request for Separate Instructions.** Where the evidence clearly showed that defendant was guilty of both burglary and larceny, or not guilty of either, defendant cannot convict the trial court of error in failing to give an instruction telling the jury that they might find him guilty of one offense and acquit him of the other, by simply objecting and excepting to the failure of the court to instruct upon all questions of law arising in the case. He should go further and indicate in some way the subjects the court has failed to cover by the instructions.

4. ———: **Entering By Window: Open Doors.** If defendant entered the dwelling-house by removing a window screen, he was guilty of burglary, and it makes no difference whether the doors were open or unfastened.

5. ————: **Weight of Testimony.** Where the verdict of guilty of burglary and larceny is supported by substantial evidence and is approved by the trial court, the Supreme Court will not interfere, however conflicting the testimony may be.

Appeal from Clinton Circuit Court.—*Hon. A. D. Burnes,* Judge.

AFFIRMED.

*Frost & Frost* for appellant.

(1) The verdict was the result of passion and prejudice on the part of the jury. The defendant was a negro and had been convicted of petit larceny when he was ten years of age. The identification was by a dim lamp light turned down half way, and during a hurried scuffle. Mrs. Daniel, one of the two identification witnesses, identified him because of a family resemblance between him and his mother and sister. In face of the poor opportunity for identification by the witnesses for the State, 23 witnesses testified to an alibi on the part of the defendant, who knew him and had every opportunity to observe, and stated that he went to and was at St. Joseph, at the time of the alleged burglary, and no jury was authorized to disregard such a mass of testimony, and because of their prejudice and passion find a verdict against an accused man. (2) The evidence tended to prove (if there had been evidence of breaking) a burglary in a dwelling-house in which there was at the time a human being and with intent to commit a larceny therein. This constituted burglary in the first degree. Revised Statutes 1899, section 1880. And as burglary in the first and second degree are separate and distinct offenses, one cannot be found guilty of burglary in the second degree where evidence goes to prove burglary in the first degree. State v. Alexander, 56 Mo. 131. (3) There is absolutely no proof whatever, inferentially

or otherwise, that a burglary was committed. The prosecuting witness it seems purposely refrained from saying the doors were closed that night, that is the outer doors, and there is no proof whatever that they were closed that night. The alleged crime was in the heat of summer time; and the courts will certainly not indulge the presumption that they were closed, in order that the State's conviction may be upheld. The breaking out certainly did not constitute burglary. One who enters a house through an open door or window is not guilty of burglary, and where there was no evidence that the outer door was closed, the proof of burglary fails. There is absolutely no proof of the *corpus delicti.* State v. Kennedy, 16 Mo. App. 287; Loudar v. State, 63 Ala. 143; Williams v. State, 52 Ga. 580; Green v. State, 68 Ala. 539; State v. Warford, 106 Mo. 55. The elements constituting the *corpus delicti* in the crime of burglary are a forceable breaking, and entry, and with intent to steal or commit a felony. The *corpus delicti* must be proven in every case before a conviction can be sustained. State v. Knolle, 90 Mo. App. 230; State v. Jones, 106 Mo. 312; Wigmore on Evidence, sec. 2072; State v. Henderson, 186 Mo. 483. What right has a jury to say that the person who entered the house of the prosecuting witness did not do so through an open door, as there is not one syllable of evidence that the door was closed? (4) While burglary and larceny may be charged in the same count of the information, they are distinct offenses. State v. Martin, 79 Mo. 34; State v. Owens, 79 Mo. 625. Where larceny is committed in perpetration of burglary, value of goods need not be stated, as it is immaterial, but unless the defendant is found guilty of the burglary the value of the goods must be stated, and if larceny is proven it is petit or grand according to the value of the goods taken. State v. Davis, 73 Mo. 131; State v. Beckworth, 66 Mo. 82. Larceny in dwelling house it is true is grand without regard to value

taken. State v. Kennedy, 66 Mo. 343. Yet the punishment for such larceny is regulated by the amount stolen, and when the value of the property amounts to less than thirty dollars, punishment may be as low as one day in county jail. There being no proof of burglary the court's instruction and the jury's verdict are erroneous. R. S. 1899, sec. 1900, 1901; State v. Brinkley, 148 Mo. 37; State v. Barker, 64 Mo. 282. It was then the duty of the court to have informed the jury that they might find the defendant guilty of burglary and not of larceny, or that they might find him guilty of both, or that they might find him not guilty as to the burglary and guilty as to larceny, in which latter case the court should have further instructed as to the different grades of punishment for larceny in dwelling house. State v. Nicholas, 222 Mo. 425. The defendant called the court's attention to the fact that it had not instructed on all points of law in the case. State v. Brinkley, 146 Mo. 37.

*Elliott W. Major,* Attorney-General, and *Charles G. Revelle,* Assistant Attorney-General, for the State.

(1) The distinction between burglary in the first and second degree, as created by sections 1880 and 1881, R. S. 1899, does not depend solely upon the question as to whether there was in the dwelling-house a human being. The degree also depends upon the manner in which the breaking and entering is accomplished. If ''by forcibly bursting or breaking the wall or outer door, window or shutter of a window, or the lock or bolt of such door, or the fastening of such window or shutter, or by being armed with some dangerous weapon, or with the aid and assistance of confederates, actually present, aiding and assisting, or by unlocking an outer door by means of a false key or picking the lock,'' it is burglary in the first degree. To make out an offense under this section, it is just as

necessary to prove that the breaking was accomplished by one of the modes specified in this section, as that it was in the nighttime or that there was a human being in the house. State v. Tutt, 63 Mo. 600; R. S. 1899, sec. 1880. Without proof of one of the modes specified, the offense is but burglary in the second degree. R. S. 1899, sec. 1881. The evidence in this case discloses that the breaking was not effected by any of the modes specified in section 1880, but by removing a wire screen from the window. (b) But let it be conceded that the evidence does tend to establish the offense of burglary in the first degree, defendant cannot complain at his conviction of the lesser crime. The prosecuting power may select for conviction any one of the offenses of which his acts make defendant guilty, and he cannot object that his guilt covers a larger and different crime. Since the case of State v. Hamey, 168 Mo. 200, this rule has been uniformly applied in this State, and in fact, was recognized in cases of this character long prior to that time. State v. Keeland, 90 Mo. 337; State v. Wagner, 78 Mo. 644; State v. Smith, 190 Mo. 718; State v. Bobbitt, 215 Mo. 8; State v. Schieller, 130 Mo. 510; State v. Lowe, 93 Mo. 574; Sec. 2369, R. S. 1899; R. S. 1899, sec. 2535. (2) The court cannot disturb the verdict on the ground of insufficiency of evidence unless a new rule is to be established in this State. State v. Matthews, 202 Mo. 147; State v. McCullough, 171 Mo. 574; State v. Tetrick, 199 Mo. 100; State v. DeWitt, 152 Mo. 76. There is substantial evidence tending to prove a breaking. State v. Moore, 117 Mo. 403; State v. Henderson, 212 Mo. 208. (3) The only serious question presented by this record is whether the court erred in not instructing the jury that defendant could be convicted of the crime of larceny alone. The offense charged in the information, and upon which defendant was tried and convicted, was that of burglary and larceny. If the cases of State v. Hecox, 83 Mo. 531, and State v. Brinkley, 146 Mo.

37, correctly declare the law in this respect, the instruction on larceny and its degrees should have been given. In our opinion, however, defendant is in no position to complain, since he in no manner directed the attention of the trial court to this phase of the case, or requested an instruction touching it. State v. Espenschied, 212 Mo. 222. The point is not more definite in the motion for a new trial, and is entirely too indefinite to be available in this court. It is a firmly established rule in this State that when the instructions of the court are read to the jury, and the defendant desires further instructions, or deems it necessary that such be given, it is his duty, in fairness to the court, to call its attention to such questions and specifically request such instructions. State v. Bond, 191 Mo. 555; State v. McCarver, 194 Mo. 742; State v. West, 202 Mo. 137.

FOX, J.—The defendant has brought this cause to the Supreme Court by appeal from a judgment of the circuit court of Clinton county, Missouri, convicting him of the offense of burglary and larceny.

On August 28, 1907, the prosecuting attorney of Clinton county filed an information, which was duly verified, charging the defendant with the crime of burglary and larceny. Following this there were three trials, in each of which the jury was unable to agree. The trial which resulted in the judgment now before the court for consideration was the fourth trial. The testimony developed upon the trial was substantially as follows:

On the part of the State, Dr. Courtwright testified that on Tuesday night, between one and two o'clock, August 6, upon being aroused by a noise in his sleeping room, he saw a man crouched at the dresser, and immediately jumped from his bed toward the burglar, who thereupon ran into another room, where all the windows were screened. From this room he

ran into the sitting room, where a bright light was burning. When he reached this room, he and witness met and a struggle between the two followed, during the course of which they fell to the floor several times. The burglar finally forced his way into another room, where a window was open, the screen having been theretofore removed, and through this window made his escape. The screen had been removed from the window before the struggle, and sometime after ten o'clock that night, the hour when Dr. Courtwright and his family retired, and was found soon after the commission of the crime, standing at the side of the window. After the burglar made his escape, it was found that he had taken a pair of trousers, two dollars and seventy cents in cash, and two pocket knives. The trousers, pocket knives and one silver dollar were found the next morning in the yard. During the scuffle the burglar lost his hat, and this was found in the house. The hat was of soft material and light color.

The burglar was identified as being Solomon Wilson, the defendant in this cause, by both Dr. Courtwright and his mother-in-law, Mrs. Daniels, who entered the room while the struggle was in progress. They were well acquainted with defendant, having known him for a number of years, and were positive in their identification of him as the person who entered the house. The light-colored hat found in the house was definitely identified by the night watchman of Lathrop as the hat of defendant, and one which he had worn for several months. The hat was also recognized by Dr. Courtwright, William Anderson, Miss Ballew, Mr. Welch, Dick Weir and J. Bickle, as looking "exactly like" the light-colored hat which they had seen defendant wear immediately prior to the commission of this crime.

On the part of defendant, the testimony tended to prove that on the afternoon of August 6th, at about

three or four o'clock, defendant and four other colored boys, left the town of Lathrop, and by means of a freight train went to Cameron Junction, arriving there at about 4:45 p. m.  At that place they made connections with a freight train bound for St. Joseph, and on it rode in a box car to Stewartsville, where they separated, defendant and one other colored boy getting into a car different from the one in which the remainder had located a free berth.  In this manner they continued their travel to St. Joseph, reaching there at about 7:30 p. m.  Defendant and his companion went directly to the home of a friend, where they remained all night.  The colored people of St. Joseph were giving a picnic, and the defendant found occasion to remain there until August 9th, at which time he returned to Lathrop, and was placed under arrest.

Defendant denied that the hat which was found in the house on the night of the crime, was his, or that he had worn a hat of similar description at any time within two years preceding the commission of the crime.  He also denied that he entered the house and stole the property, but contended that he was in St. Joseph on the night in question.  The evidence also tended to prove that on the night when the crime was committed, a strange negro, wearing a light-colored, soft hat, was seen in the town of Lathrop.

At the close of the evidence the court instructed the jury.  We do not deem it essential to reproduce the intructions, but will give them such attention as may be necessary during the course of the opinion. The cause was submitted to the jury upon the evidence introduced and the instructions of the court and they returned their verdict finding the defendant guilty as charged, of both burglary and larceny, assessing his punishment at imprisonment in the penitentiary for a term of five years.  Timely motions for new trial and in arrest of judgment were filed, taken up by the court and overruled.  Sentence and judgment were entered

in accordance with the verdict returned by the jury and from such judgment the defendant prosecuted this appeal, and the record is now before us for consideration.

## OPINION.

### I.

It is insisted by learned counsel for appellant that the judgment in this cause should be reversed for the reason that the information charged burglary in the first degree, and that if the evidence tended to show the commission of any offense, it was that of burglary in the first degree; hence the conviction of the defendant of burglary in the second degree was erroneous. This contention is predicated mainly upon the theory that the burglary charged in this case was in a dwelling house in which there was at the time of the commission of such burglary a human being. This proposition necessitates a brief review of the sections of the statute defining burglary.

Section 1880, which defines burglary in the first degree, provides: "Every person who shall be convicted of breaking into and entering the dwelling-house of another, in which there shall be at the time some human being, with intent to commit some felony or any larceny therein, either: First, by forcibly bursting or breaking the wall or outer door, window or shutter of a window of such house, or the lock or bolt of such door, or the fastening of such window or shutter; or second, by breaking in any other manner, being armed with some dangerous weapon, or with the assistance and aid of one or more confederates, then actually present, aiding and assisting; or third, by unlocking an outer door by means of false keys, or by picking the lock thereof, shall be adjudged guilty of burglary in the first degree."

Following this section it is provided by section 1881 that "every person who shall be convicted of breaking into a dwelling-house, with intent to commit a felony or any larceny, but under such circumstances as shall not constitute the offense of burglary in the first degree, shall be deemed guilty of burglary in the second degree."

These two sections of the statute make substantially the same provisions concerning the offense of burglary as were made in Wagner's Statutes 454, secs. 10 and 11. The provisions of these sections of the statute were in judgment before this court in State v. Tutt, 63 Mo. 595. In that case, as in the case at bar, it was earnestly insisted that the defendant, upon the charge in the indictment and the facts developed upon the trial, could not be convicted of burglary in the second degree. The defendant's theory in that case was that the entering of a dwelling-house by raising a window without breaking or bursting it constitutes the crime of burglary in the first degree, and as there was no evidence that the defendant entered in any other manner, he could not be convicted of burglary in the second degree. The proposition was thoroughly treated and the authorities applicable to it reviewed. It was held in that case that the degree of burglary for breaking and entering into a dwelling-house in which there was some human being depends upon the manner in which the breaking and entering is accomplished. At common law, burglary was the breaking and entering the dwelling-house of another in the nighttime, with intent to commit a felony therein.

In 1st Bishop's Criminal Law (3 Ed.) 327, it is said: "The mere lifting of a latch and so opening a door not otherwise fastened, or pushing upward or lowering a window sash which is held only by a wedge or pulley weight, or raising a trap door meant to be ketp down merely by its own gravitation, or procuring by craft, or by threats and intimidation, a person

within the house to open the door, is, in legal contemplation, a breaking.''

Manifestly from the provisions of sections 1880 and 1881 it was intended to make a change and define conclusively the degrees of burglary. This was clearly decided in State v. Tutt, supra, where it was said by this court, speaking through Judge HENRY, that ''it is evident, however, that our statute did intend to make a change, not that any entering and breaking, which at common law was burglary, is not still burglary under our statute; but those cases of breaking and entering at common law, which were effected in other modes than those specified in the tenth section, are now burglary in the second degree under the eleventh and succeeding sections of the statute. An indictment for burglary in the first degree under the tenth section must state, not only the breaking and entering into a dwelling-house in which at the time there was a human being, with intent to commit some felony or larceny, but that such breaking and entering was effected in one of the modes specified in that section. The manner of the breaking into a dwelling-house is one of the ingredients of burglary in the first degree.''

The learned judge in the Tutt case, in reviewing section 10 of Wagner's Statutes, which is, as heretofore stated, substantially the same as section 1880 of our present statutes, stated that the 10th section of Wagner's Statutes was copied from a New York statute which had in that State received a judicial construction. Following this, reference is made to the New York case interpreting the provisions of the New York statute, from which our statute was borrowed, wherein it was said: ''In the People v. Fellinger, 24 How. (N. Y.) 341, the court held that an indictment for burglary in the first degree, under the statutes of which ours is a copy, was fatally defective if it omitted to state

the mode of breaking into the dwelling-house. 'The mode of breaking into the house (Ingraham, P. J.), as stated in the statute, is just as necessary to be proved to make out the offense, as that it was in the nighttime, or that there was at the time a human being in the house. Without proof of one of these modes of entering the house, the offense is only burglary in the second degree.' In the case of the People v. Bush, 3 Park. Crim. Cas. 553, the court held that 'to constitute burglary in the first degree, there must be forcibly bursting or breaking the wall or an outer door, window or shutter of a window, or the lock or bolt of such door, or the fastenings of such window, or shutter or breaking in any other manner, being armed with some dangerous weapon, or with assistance and aid of one or more confederates, then actually present, or by unlocking an outer door by means of false keys, or by picking the lock thereof.' "

Judge HENRY finally ruled in the Tutt case that the indictment simply charged burglary in the second degree, and that the evidence did not show a mode of breaking and entering the dwelling-house contemplated by section 10 sufficient to constitute burglary in the first degree, and that the defendant was properly convicted of burglary in the second degree. In announcing his final conclusion he used this language: "The forcibly bursting or breaking an outer door means, in common parlance, more than merely lifting a latch. That the first subdivision of the tenth section must have designed something further, is apparent from the third subdivision, which provides that unlocking an outer door by means of false keys or picking the lock thereof, shall be a sufficient breaking to constitute burglary in the first degree. The provision would have been wholly unnecessary, if simply unlatching the door would have been deemed bursting or breaking it within the meaning of a former part of the same section. We are satisfied that the construction

which the New York courts have given the statute under consideration is the correct one, and that, as the indictment in the case at bar was for burglary in the second degree, and the evidence sustained that charge, and no other, and the instructions given by the court were in relation to that degree of the offense, and those asked by defendant and refused, were as to burglary in the first degree, the court committed no error in giving or refusing instructions.''

It will be observed that the information in the case at bar is not predicated upon the provisions of section 1880, which specifically designates the mode of breaking, in order to constitute burglary in the first degree. In order to constitute burglary of the first degree under the provisions of section 1880, the breaking and entering must be accomplished by forcibly bursting or breaking the wall or outer door, window or shutter of a window, or the lock or bolt of such door, or the fastening of such window or shutter, or by being armed with some dangerous weapon, or with the aid and assistance of confederates actually present, aiding and assisting, or by unlocking an outer door by means of false keys or by picking the lock. The information in this case did not charge in the terms of the statute any of such modes of breaking and entering, but simply alleged the forcible removing of a wire screen of an outer window of said dwelling-house.

It was said in State v. Tutt, supra, that the forcibly bursting or breaking an outer door means, in common parlance, more than merely lifting a latch. So it may be said in the case at bar, that the forcibly bursting or breaking of an outer shutter or window or shutter of a window means something more than merely the removing of a wire screen of an outer window of a dwelling-house. That the unlatching of the fastening of a wire screen in the window is a sufficient breaking to constitute burglary, there can be no doubt, and, applying the rules as announced as to the proper inter-

pretation of the sections of the statute applicable to burglary by this court, as well as by the New York courts, we see no escape from the conclusion that the information in this cause charged simply burglary in the second degree, and that the evidence if it established the commission of any offense, it was that of burglary in the second degree.

Again, it may be said that even if it be conceded that the evidence does tend to establish the offense of burglary in the first degree, it is very questionable as to whether the defendant is in a position to complain of a conviction of a less degree of the crime of the same grade simply because the evidence tended to show him guilty of a higher degree of the offense. [State v. Hamey, 168 Mo. l. c. 200-204; State v. Keeland, 90 Mo. 337; State v. Wagner, 78 Mo. 644; State v. Smith, 190 Mo. l. c. 718-722; State v. Bobbitt, 215 Mo. l. c. 38; State v. Schieller, 130 Mo. 510; State v. Lowe, 93 Mo. l. c. 574; Sec. 2369, R. S. 1899; Sec. 2535, R. S. 1899.]

## II.

It is next insisted that the court committed reversible error in failing and refusing to instruct the jury upon all questions of law arising in the case. This insistence is predicated upon the failure of the court to fully inform the jury as to their findings upon the offenses as charged. In other words, that the court failed to correctly instruct the jury that they might find the defendant guilty of the burglary and acquit him of larceny, or might find him guilty of the larceny and acquit him of the burglary, and also failed to direct the jury if they simply found the defendant guilty of the larceny alone as to what punishment should be assessed in the event that they found the value of the property taken was less than thirty dollars.

Upon this state of the record we are confronted with the question as to whether or not the exceptions

of the defendant were broad enough to place the defendant in a position to complain of the failure of the court to fully instruct the jury upon the offenses of burglary and larceny as herein indicated. The exception as disclosed by the record simply shows that upon the giving of the instructions to the jury the defendant excepted "and also objected and excepted to the action of the court in failing and refusing to instruct the jury upon all questions of law arising in the case." In the motion for new trial this question was presented to the trial court in the sixth ground of the motion, as follows: "Because the court erred in failing to properly instruct the jury on all points of law in the case."

Directing our attention to this proposition it is manifest that the State tried this case upon the theory that the defendant was guilty of burglary and larceny, and the testimony on the part of the State fully justified that theory. If the testimony of the State's witnesses is to be believed, then this defendant was guilty of both burglary and larceny. The testimony of the removing of the screen by whoever it was that entered the building in order to make the entrance into the dwelling, and the additional fact that the burglar in escaping from the building passed through different rooms until he reached the room where this screen had been removed, that is, if the testimony of the witness, Dr. Courtwright, as to the removal of the screen and the escape of the burglar was believed, was a sufficient showing to constitute a breaking. The defendant's side of the case was tried upon the theory that he was not guilty at all; in fact that he was not present at the time and place of the commission of the burglary charged. These were the theories upon which the State and the defendant presented this case to the jury, and upon this view of the record, in our opinion, if counsel desired the jury to receive further instructions upon the questions of burglary and larceny, in other words, if they deemed it essential that the jury

should be informed that, if they acquitted the defendant of the burglary and found him guilty of the larceny, it followed that the conviction could only be of larceny from a dwelling-house, they should have in some way at least indicated to the trial court the subject upon which the jury should have been given further information.

In State v. Espenchied, 212 Mo. 1. c. 222-223, this court in treating of the proposition now under consideration, said: "While the record discloses that at the time the instructions were given 'the defendant further excepted to the failure of the court to instruct the jury on all questions of law in the case,' he did not intimate or suggest to the court upon what feature of the case it had failed to instruct, nor request it to instruct in any manner. In State v. West, 202 Mo. 1. c. 137, there is quoted with approval the following from State v. McCarver, 194 Mo. 742: 'The only construction which can be placed upon this objection is that the instructions did not cover all the points of law involved in the case, and not that they were in any respect erroneous. We have held that when the instructions of the court are read to the jury, and the defendant desires further instructions, it is his duty, in fairness to the court, to call its attention to any matter of law arising in the case upon which the court had failed to instruct, and which was deemed necessary by the defendant to be placed before the jury in order that they might arrive at a just verdict, and in the event of the failure of the court to so instruct, it becomes the duty of the defendant to except at the time. [State v. Bond, 191 Mo. 555.]" Besides, the point is not more definite in the motion for a new trial, and is entirely too indefinite to be available in this court.

In a number of comparatively recent well-considered cases treating of this proposition the rule has been firmly established in this State that when the defendant desires further instructions than those giv-

en by the court, which he may deem necessary for the further information of the jury, it becomes his duty to direct the attention of the court to the questions or subjects upon which further instructions should be given. [State v. Bond, 191 Mo. 555; State v. McCarver, 194 Mo. l. c. 742; State v. West, 202 Mo. l. c. 137.]

After the instructions of the court are read to the jury, simply interposing an exception in general terms that the court has failed to instruct upon all the law arising in the case, in our opinion, is entirely too in-·definite to furnish defendant any basis for complaint in the appellate court with the view of convicting the trial court of error by reason of such failure. It is not a harsh rule to require counsel for the defendant to indicate in some way the subjects which the court has failed to cover by its instructions; this is but common fairness to the trial court. It is not essential that an instruction be presented to the court covering the subject, but if counsel for the defendant suggest to the court the subject or subjects upon which the jury should be given further information, this would be entirely sufficient as a basis for complaint in the appellate court, should the court erroneously fail to cover the subjects suggested.

Again, the theories upon which the State and the defendant tried this case must not be overlooked. Manifestly the theory of the State was that the defendant, if guilty at all, was guilty of burglary and larceny, and that of the defendant was that he was not guilty at all, for the reason that he knew nothing about the commission of the offense and was not present at the time of its commission. The counsel for the appellant, as disclosed by the record, presented the case to the jury for the defendant in its strongest light, and the evidence introduced on the part of the defendant in support of his alibi was amply sufficient to convince the counsel that their client was not guilty of any offense at all, and it was but natural, even

though the subject of larceny from a dwelling house came to their minds at the time of the reading of the instructions, for them not to ask an instruction upon that theory of the case, or even suggest it to the court. They simply followed the course that is usually followed by the experienced practitioner and declined to offer an instruction for a lower grade of offense or even to make a suggestion to the court covering such offense. Doubtless this course was pursued for the reason that the offering of an instruction or a suggestion for one covering a lower grade of the offense in open court might have a tendency to lessen or weaken the force of their position that the defendant was not guilty of any offense at all; however, when the instructions were read to the jury and counsel were confronted with the proposition as to whether or not they would suggest an instruction covering a lower grade of crime, it was for them to determine, and it was but fair to the trial court, if they deemed the instructions as given insufficient to cover all the subjects, to have at least suggested in some way to the court that further instructions should be given, otherwise it leaves the defendant in no position to complain of the failure of the court to cover a subject by its instructions to which its attention was not called, except by the most general terms, which in effect amounts to no calling at all.

Learned counsel for appellant upon this proposition direct our attention to the cases of State v. Brinkley, 146 Mo. 37; State v. Hecox, 83 Mo. 531, and State v. Nicholas, 222 Mo. 425, as supporting the contention that the failure of the court to instruct as heretofore indicated, constitutes reversible error.

In State v. Brinkley it will be observed that this court, speaking through Judge BURGESS, reversed and remanded that case for the reason that the defendant had requested an instruction, while not sufficiently full, yet entirely sufficient to call the court's attention to the fact that a correct instruction should be

given covering that subject, and the court failed to give a proper instruction covering the subject. In treating of the proposition in that case, Judge BURGESS said: " 'The jury were properly informed as to what their verdict should be if they found the defendant guilty of burglary, and if they found him guilty of both burglary and larceny, but they should have been further told that they could acquit of burglary and find defendant guilty of larceny; in which event the larceny would be petit larceny only under this indictment.' While the instruction asked by defendant upon this theory of the case did not go far enough in that it did not tell the jury that they might convict of burglary and acquit of larceny, as well as acquit of burglary and convict of larceny, or convict or acquit of both, as they believed them guilty or not guilty under the evidence, by it the court's attention was called to the fact that it had failed to so instruct (State v. Davis, 141 Mo. 522), which should have been done, and because of its failure to do so, we reverse the judgment, and remand the cause."

In State v. Hecox, it will be noted that case was reversed and remanded for the reason that the cause was tried in the lower court on the theory that if the defendant was found guilty of larceny he must also be found guilty of burglary, and it was expressly stated by the court that under the indictment and facts in that case the defendant could only be convicted of the larceny; hence, it was clearly erroneous for the court to fail to instruct the jury covering the only offense of which he could be convicted under the charge. That case manifestly furnishes no support for the contention in this case that an exception in the general terms as heretofore mentioned was sufficient to furnish a foundation for complaint in the appellate court.

In State v. Nicholas, counsel for defendant objected and excepted to all of the instructions given by the court in the case, and especially excepted to the

action of the court "in not instructing on all the law in the case and not instructing on the different degrees of larceny." It was held in that case, and we think properly so, that the special exception to the failure of the court to instruct the jury on the different degrees of larceny was sufficient to call the court's attention to its failure to embrace in the instructions, in the event the jury should find the defendants not guilty of burglary, the subject of larceny from a dwelling-house. Moreover, it will be observed in that case that the jury simply returned a verdict against the defendants for grand larceny, and the record disclosing a conflict in the testimony as to the value of the property, it became highly important for the court, upon its attention being called especially to the fact, to have directed the jury respecting the punishment to be assessed for larceny from a dwelling-house where the value of the property was less than thirty dollars.

That is not this case. The jury in the case at bar found the defendant guilty of both burglary and larceny, and we again repeat, if the testimony of Dr. Courtwright and Mrs. Daniels was true, and the jury believed it to be true, then in our opinion the defendant was properly convicted of both burglary and larceny.

### III.

It is earnestly contended by counsel for appellant that under the evidence as developed upon the trial in the lower court the defendant should be acquitted. We are unable to give our assent to this contention. While it must be conceded that counsel for the defendant made a strong showing in support of the alibi of the defendant, and if the testimony as offered was true, and the jury saw proper to believe it, there can be no question but what the defendant was entitled to an acquittal. But on the other hand, it may be said that

the testimony as introduced by the State, if true, and believed by the jury fully supports the conviction of the defendant. Dr. Courtwright and Mrs. Daniels, both of whom had known defendant for a number of years, testified that there was a bright light burning in one of the rooms which enabled them to see the defendant plainly, and both of these witnesses, without hesitation, identified the defendant as being the Solomon Wilson, the burglar. In addition to this the night watchman of Lathrop positively identified the hat which was left by the burglar in the room in making his escape, as being the hat worn that afternoon between three and four o'clock by the defendant, Solomon Wilson. Numerous other witnesses testified that the hat left by the burglar looked very much like the hat they had often seen the defendant wearing. Upon the question    of breaking, Dr. Courtwright testified that upon retiring the window through which the defendant escaped was securely screened, and that this screen was out of the window when the defendant escaped and was found after the commission of the offense standing at the side of the window. The testimony clearly shows that the defendant entered the dwelling-house by removing the window screen. The screen was in the window when Dr. Courtwright and his family retired, and the defendant was discovered in the dwelling-house and in the struggle with Dr. Courtwright he reached the room where this screen had been removed and made his escape from that window.

It is argued by appellant's counsel that the doors to the dwelling-house were left unfastened or opened. It is a sufficient answer to that argument to say that if the defendant entered this house by removing the screen, which the testimony, in our opinion, clearly establishes, it is immaterial whether the doors were fastened or not. The law would not require the State

to institute a general inquiry as to the other various openings and fastenings of the entrances to such house. It was sufficient for the State to introduce testimony which substantially tended to show that the defendant in effecting his entrance into the dwelling of the prosecuting witness had removed a wire screen to one of the windows, and not only made his entrance through that window, but as well his escape. If the doors were opened or unfastened it seems that the defendant did not either go in or out of the house that way. He knew full well that the window screen had been removed; he came in that way and adopted that opening as the one through which to make his escape.

It is unnecessary to cite authorities that this court will not undertake to retry a case upon the evidence as disclosed by the record. If there is substantial evidence to support the verdict, this court has uniformly held that it will not disturb such verdict on the ground of a conflict in the evidence. This case is no exception to cases of this character. With few exceptions there is always some conflict in the testimony developed upon the trial, and it is the sole province of the jury to determine the credibility of the witnesses and the weight to be attached to their testimony. We have often said that the trial court and the jury have opportunities of judging of the credibility of the witnesses and the weight to be attached to their testimony that are not afforded the appellant tribunal. The verdict in this cause was returned by the jury after a full hearing of the testimony in the cause. The trial court saw the witnesses and heard them testify, and fully approved the finding of the jury. We are unwilling, upon this state of the record, to disturb this verdict which is supported by substantial testimony showing the guilt of the defendant and has met the approval of the learned judge presiding at the trial.

Entertaining these views, to which we have given expression, the judgment of the trial court should be affirmed, and it is so ordered.

All concur.