### JOHN MITCHELL, ALIAS JACK SMITH, v. THE STATE.

#### *No. 110. Decided December 20.*

1. **Burglary with Intent to Commit Rape.** — To sustain a conviction for burglary with intent to commit rape, the proof must show that the accused entered the house with the specific intent to have carnal knowledge of the prosetrix, without her consent, by fraud, by threats, or by force.

2. **Same—Force, Character and Extent of—Charge of Court.**—If the element of force be alone relied on in burglary with intent to commit rape, then to warrant a conviction the evidence must establish an intent upon the part of the accused to have carnal knowledge of the prosecutrix without her consent and by the use of such force as might reasonably be supposed to be sufficient to overcome resistance, and it is error for the court to refuse to so charge the jury.

3. **Same—Evidence Insufficient.**—See evidence which in the opinion of the court is wholly insufficient to support a conviction for burglary with intent to commit rape.

APPEAL from the District Court of Falls. Tried below before Hon. L. W. GOODRICH.

This appeal is from a conviction for burglary with intent to commit rape, the punishment being assessed at ten years imprisonment in the penitentiary.

The opinion sufficiently states the facts in the case.

Defendant's refused special instruction was as follows, viz.:

"Defendant asks the court to charge the jury, that even though they should find that the defendant unlawfully entered the house in question for the purpose of having carnal knowledge of one Miss Matilda Newman without her consent, yet before you can convict the defendant you must find that the defendant entered the house with the intent to have such carnal knowledge by force; and by force is meant such as might reasonably be supposed to be sufficient to overcome resistance, taking into consideration the relative strength of the parties and other circumstances of the case. Therefore, unless you find, beyond a reasonable doubt, that at the time the defendant entered the house he then and there entertained the intention of having carnal knowledge of Matilda Newman, without her consent and by force, as force has been herein before defined, then and there intending to overcome such resistance as might be reasonably expected would be made in such undertaking, and unless you so find you will acquit him."

No briefs on file.

*R. L. Henry*, Assistant Attorney-General, for the State.

HURT, PRESIDING JUDGE.—Appellant was convicted of burglary with intent to commit rape upon one Matilda Newman, and his punishment assessed at ten years confinement in the penitentiary.

The prosecutrix, Matilda Newman, testified: "I reside in Falls County, Texas, about one mile east of Perry, Texas, with my stepfather, Charley Treager. I know the defendant. The house we live in is a two-story house, and I occupied a room in the upper story on the night of November 9, 1892. I retired at the usual hour, about 9 o'clock, together with a lady friend, Lena Vogus, who was spending the night with me. We slept in the same bed. My mother and stepfather occupied the room down stairs just under my room. About 12:30 o'clock that night I was awakened by some one touching my foot. I called to my companion, and told her I thought some one was in the room. She replied, 'I guess not.' I asked her to strike a match, which she did, and I saw a man standing at the foot of the bed, between the bed and the wall. The bed was standing out from the wall some two feet or more. As soon as the match was struck, the defendant walked to the door, and out of the room. I called my mother, who came immediately to my room. I told her that John was in my room, and related to her what had happened. I was badly frightened. I never saw the defendant again until the following Saturday. I recognized the defendant. The defendant at no time said anything nor uttered a word. When I woke, I moved my foot, and the defendant removed his hand, and made no other attempt to touch me. We all went down stairs immediately, and found that the window in the parlor was raised, and two panes of glass broken out. The size of the glass was eight by twelve, the window having four lights. The defendant had on a light coat and a white hat. When I saw him the following Saturday, I was picking cotton in the field some fifty yards distant. Defendant worked for my stepfather a short while last spring. I never gave my consent for the defendant to enter the house or my room. All the doors and windows were closed on the night we retired. The front hall door was fastened on the inside by a latch, the back hall door being locked from the inside. The back door also had a lock on the inside, and a key was in the lock, which was unlocked. I recognized the defendant as the person who was in the house that night. I screamed as soon Lena struck the match and I saw the defendant. The night was a bright, moonlight night, and was cold, and Miss Vogus and myself were covered up in bed."

Lena Vogus, being sworn, for the State, testified, in substance, to the same facts as did Matilda Newman, save that "she did not see defendant place his hand on Matilda Newman, nor did she recognize defendant. She saw the man; he was a man, but she did not know him."

To sustain this conviction, the proof must show that appellant, when he entered the house, did so with the specific intent to rape Matilda Newman; entered the house with the intention to have carnal knowledge of Miss Newman without her consent, by fraud, by threats, or by force.

There being no fraud nor threats in the case, we will treat it with reference to force; hence the proof must establish the fact that appellant

entered the house with the intention to have carnal knowledge of Miss Newman without her consent, and by the use of such force as might reasonably be supposed sufficient to overcome resistance. Did appellant enter the house with such intentions? If he did, he was guilty of burglary. We ascertain the intentions of the accused in such cases from what he said and did before the entry, and while in the house. In this case he did and said nothing bearing on his intention after he left the house. What was said and done by appellant before he entered the house? On the evening before the supposed burglary he said to witness Berrenger, " I am going out on the prairie to-night to see my girl." Witness asked him, " What girl?" and appellant replied, "A German girl." Whereupon Berrenger became very indignant and mad, telling appellant that he had better mind how he talked, or he would put him out of the store; that he (witness) was a German himself. Why this German's passion was aroused to indignation at such a remark, or said remark tends to show that appellant intended to outrage a German girl, is beyond our comprehension. This matter may, under certain circumstances, tend to identify appellant as the man who entered the house. It is very slight in this case, however; for while it is shown from the language of the step-father that he is a German, it is not shown that Miss Newman is a German.

What did appellant do while in the house? He touched Miss Newman's foot, she screamed, and, when he discovered Miss Vogus was present, he left. Do these facts prove beyond a reasonable doubt that appellant entered the house with the specific intent to have carnal knowledge of Miss Newman without her consent, by the use of such force as was reasonably sufficient to overcome such resistance as Miss Newman was able to make? They evidently do not. Why? Because every fact is, if true, as consistent with the theory that he entered the house for the purpose of having carnal knowledge of Miss Newman without force, and with her consent, as it is that he intended to ravish her. The evidence fails to support the verdict.

. Counsel for appellant requested the court to define to the jury the character of force necessary to constitute rape. This the court refused to do, and exceptions were reserved. This was error, and especially in this case, for the facts imperatively demanded the requested instructions.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Judges all present and concurring.