## Domingo Brown v. The State.

### No. 7480. Decided April 4, 1923.

Burglary—Private Residence—Rape—Insufficiency of the Evidence.

Where, upon trial of burglary of a private residence with intent to commit rape upon a female under the age of consent, the evidence was insufficient to show that defendant entered the house with the specific intent to have carnal relations with the person alleged in the indictment, either with her consent or by force, the conviction could not be sustained.—Following Hays v. State, 86 Texas Crim. Rep., 469, and other cases.

Appeal from the District Court of Coryell. Tried below before the Hon. J. R. McClellan.

Appeal from a conviction of burglary with intent to commit rape; penalty, five years in the penitentiary.

The opinion states the case.

*Albert Strawn* for the appellant.

*R. G. Storey,* Assistant Attorney General for the State.

HAWKINS, Judge.—Appellant was charged with burglarizing the private residence of A. A. Herrman with intent to commit rape upon Edith Herrman, a female under the age of eighteen years. A second count charged him with burglary with intent to commit theft, but only the first count was submitted to the jury. Upon conviction his punishment was fixed at five years in the penitentiary.

We discuss only the one question of the sufficiency of the evidence. Appellant was a mexican youth under seventeen years of age at the time of the transaction complained of. He lived with his father and stepmother on a farm situated about a mile from the property of A. A. Herrman. The family of Herrman also lived on a farm. The two families had no acquaintance except that they knew each other and what farms and property each occupied. Herrman's family could see the Brown family and members thereon as they came to and from the field, and passed up and down the road in front of their house. During the three years they lived near each other there was not even the slightest attempt at social intercourse by appellant or his people with Herrman or his family. The two Herrman girls, Edith and Eunice, testified that they would sometimes meet or pass appellant as he would be going along the road, but that during all this time he only spoke to them on two occasions, once on the road and at another time when he came to Herrman's house to get a dog. He was never in Herman's residence, and so far as the record shows, knew nothing about the situation of the rooms nor where the various members of the family slept. Going to the facts testified to by the witnesses upon which the burglary with alleged intent to rape is predicated, we find that Edith Herrman at the time of the alleged offense was about fifteen years old, and her sister Eunice a year younger. There was not a great deal of difference in their size, and they slept together. In an adjoining room slept the father and mother. Edith slept on the side of the bed nearest the door and Eunice next to the wall. About two o'clock at night Edith felt a touch on the bottom of her foot. She whispered to her sister and both waited and said nothing; again the touch on the foot when they talked about it in whisper but made no outcry. After a little time she was touched slightly again on the bottom of the foot when the girls called out to their father. A party hurried out of the room, nothing ever being said, and there being no recognition by the girls of the intruder. There was no grasping of the ankle or limb; only a light touch on the bottom of the foot. It had rained the day before and tracks were found in the house, apparently having been made by some one in their sock-feet or wearing tennis shoes; tracks were found by officers leading to Brown's house. The boy was suspicioned and arrested the next morning while at the house of another mexican getting his hair cut. He was taken by the officers to the court house and a confession secured from him, which, omitting the formal parts, is as follows:

"December 19 or morning of 20th, 1919, about 1'oclock, I went to the house of Ace Herman, who lives about one mile from where I did on Stewart's place, and I went through the front yard and opened the front door and went inside the front door of the house and some girls in the room called for their father. I was afraid that they would shoot me and I hurried out of the room and did not stop till I

got to the front gate and then on to the windmill and then down to the big gate of the public road and then on home. I knew who lived at the place. I knew Mr. Ace Herman and his family, and knew his girls but did not know their names. After I got inside the room as mentioned above, I was in a stooped position and put my hands under one of the quilts or covers on the bed. Some one called for their father about that time and I left as stated above. I suppose that I was about 15 minutes getting into the room and in and around the house."

There having been no recognition of the party in the girls' room, the evidence with reference to the tracks is not sufficient to have predicated the verdict of guilt upon. The appellant said he was induced to make the confession by threats that if he did not do so, he would be permitted to "rot in jail." This is denied by the parties who were present at the time the confession was made. For the purpose of this discussion we assume that the confession was properly admitted.

Before a conviction can be had for burglary with intent to commit the offense of rape there must be evidence, not only showing the burglarious entry, but also that the party at the time he so entered had the specific intent to commit the offense of rape upon the identical female alleged in the indictment to be the intended victim. A careful examination of the statement of facts leads us to the conclusion that if appellant entered the house he could have had no knowledge of the position of the occupants. It is contended by the state that appellant stood by a window and saw the girls undress and retire and thereby knew where they slept. This conclusion is drawn from the fact that there is some evidence that foot-prints were found outside of a window. If this inference of the State is correct, then appellant knew that two girls were sleeping together in the same bed. He knew also that the other members of the family were somewhere about the house. Was it appellant's intention to violate Edith Herrman by force? It is true this is not necessary in the instant case as she was under the age of consent, therefore his intent must be considered from both the point of rape by force and intercourse obtained by consent. Could any sensible man have deemed it possible to have forcibly and against the will of Edith Herman have violated her person under the circumstances shown by the record in this case? On what theory could it be surmised that this young lady could have been induced to yield to his entreaties, and have consented to an act of intercourse with him? He was practically a stranger to her, not only that, but a member of another race; he had never presumed during the three years his family had lived near them to speak to her except on two occasions, and then only casually in passing; he had not been in her company; had never gone out to parties with her; they had never associated together in any way. Why should the state have selected

Edith Herrman ·as the alleged victim, instead of her sister, Eunice? What more evidence is there in the record that appellant had improper designs against Edith more than against Eunice, except for the bare fact that he placed his hand upon Edith's foot and not upon that of Eunice; and what more reason did appellant have to believe that he could forcibly ravish Edith under such circumstances, or that she would consent to advances from him more willingly than Eunice? The absence of relations with both of the girls seems to have been the same. All the cases, so far as we are aware, on the question of determining what purpose accused had in mind in making a burglarious entry into a house, if no acts are committed tending to show intent, hold that the presumption of intent to commit theft would be indulged, but are explicit on the point that no intent will be presumed to convict one who is claimed to have entered a house burglariously with intent to violate the person of a particular female. Evidence must be produced from which the inference may be fairly drawn as to this particular intent. . Where two girls are in the same bed intent to ravish the one can be as easily presumed as the intent to ravish the other. The solitary fact upon which the state relied to convict appellant of burglary with the specific intent to commit rape upon Edith Herrman was the fact that in the dark room he placed his hand upon the bottom of her foot on three occasions, never saying a word, and making no proposition to her looking to carnal favors. We believe it may be fairly inferred from all the facts that if Eunice had been sleeping on the side of the bed nearest the door it would have been her foot that was touched instead of her sister's.

It is always with reluctance that this court disturbs a verdict because of the insufficiency of the evidence, but justice sometimes demands that this be done in the discharge of our duty. We have not been cited to a case, neither are we aware of any, where a conviction of burglary with intent to commit the offense of rape has been upheld upon a similar state of facts as presented in this record. Most of the cases hereafter cited are those in which violation of the female, if intended at all, to constitute rape must have been by force and against her will, but the reasoning is the same in all of the opinions, and reaches the same result. We do not review the cases at length but cite them here as illustrative of the point discussed. Turner v. State, 24 Tex. Crim. App., 12, 5 S. W. Rep., 511; Coleman v. State, 26 Tex. Crim. App., 252 9 S. W. Rep., 609; Walton v. State, 29 Tex. Crim. App., 162, 15 S. W. Rep., Mason v. State, 47 Tex. Crim. Rep., 401, 83 S. W. Rep., 689. (Facts similar to instant case); Sedgwick v. State, 57 Tex. Crim. Rep., 420, 123 S. W. Rep., 702; Hays v. State, 86 Tex. Crim. Rep., 469, 217 S. W. Rep. 938.

We can not bring ourselves to believe that the State has met the requirements of the law to that degree in making out the offense charged as would authorize the incarceration of this youth in the

penitentiary. If he was in the house, of course his conduct was reprehensible, but he can not be sent to the penitentiary on general principles; if sent at all it must be upon proof which fairly shows that he entered the house with the specific intent to have carnal relations with Edith Herrman, the identical person alleged in the indictment, either with her consent or by force, neither of which conclusions seems to us to be reasonable or justified under the facts of this case.

The judgment is reversed, and the cause remanded.

*Reversed and remanded.*