**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Gary Michael ASBERRY,
Defendant-Appellant.**

No. 10465.

Missouri Court of Appeals,
Springfield District.

Dec. 8, 1977.

John D. Ashcroft, Atty. Gen., Walter O. Theiss, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

David G. Neal, Eminence, for defendant-appellant.

TITUS, Judge.

Per information filed in the Circuit Court of Reynolds County, defendant was charged with having committed first degree burglary as denounced by § 560.040, V.A.M.S.[1]  A jury found him guilty and fixed the minimum punishment, i. e., five years' imprisonment.  § 560.095, V.A.M.S.

The pertinent portions of the information alleged that on August 3, 1975 (a Sunday), defendant did "[w]ilfully, intentionally, unlawfully and feloniously, break and enter the occupied dwelling house of another, namely Gerald Massie, in which there were at the time several human beings, with the intent then and there to commit a felony therein, namely, rape." On appeal, defendant's first Point Relied On is that the information was not sufficient to sustain a conviction of burglary in the first degree.  We agree.

Citing and quoting *State v. Wilson*, 225 Mo. 503, 513, 125 S.W. 479, 482 (1910) and

1. Sec. 560.040. Every person who is convicted of breaking into and entering the dwelling house of another, in which there is at the time some human being, with intent to commit some felony or to steal therein, either: First, by forcibly bursting or breaking the wall or outer door, window or shutter of a window of such house, or the lock or bolt of such door, or the fastening of such window or shutter;  or, second, by breaking in any other manner, being armed with some dangerous weapon, or with the assistance and aid of one or more confederates, then actually present, aiding and assisting;  or third, by unlocking an outer door by means of false keys, or by picking the lock thereof, shall be adjudged guilty of burglary in the first degree.

*State v. Tutt,* 63 Mo. 595, 601 (1876), it was said in *State v. Young,* 345 Mo. 407, 410, 133 S.W.2d 404, 406[4] (1939): "'An indictment [or information] for burglary in the first degree . . . must state, not only the breaking and entering into a dwelling house in which at the time there was a human being, with intent to commit some felony or [stealing], *but that such breaking and entering was effected in one of the modes specified in that section. The manner of breaking into a dwelling house is one of the ingredients of burglary in the first degree.'"* *State v. Faber,* 499 S.W.2d 790, 792 (Mo.1973); *State v. Johnson,* 454 S.W.2d 27, 29[1] (Mo.1970); *State v. Zammar,* 305 S.W.2d 441, 443[4] (Mo.1957); *State v. O'Brien,* 249 S.W.2d 433, 434[1] (Mo.1952), cert. den. 344 U.S. 859, 73 S.Ct. 100, 97 L.Ed. 667; cf. *State v. Johnson,* 537 S.W.2d 816, 818[1] (Mo.App.1976).

Although the information, supra, charged that there was a felonious breaking and entering of an occupied house of another with the intent to commit a felony, "[i]t does not charge a forcible bursting or breaking of the door or the lock or bolt thereof, under the first subdivision of the section; [nor a breaking, being armed with some dangerous weapon or with the assistance of a present confederate, under the second subdivision]; nor an unlocking of the door by means of false keys or by picking the lock, under the third subdivision. While the information may be sufficient to charge burglary in the second degree, we are forced to hold it is fatally defective as a charge of burglary in the first degree." *State v. Young,* supra, 133 S.W.2d at 406–407[5].

Defendant next challenges the sufficiency of the evidence to sustain a conviction of burglary in the first degree. We shall see.

In the early morning hours of the date in question, i. e., 12:30 a. m. to 2 a. m. depending on whose testimony is accepted, Gerald and Virginia Massie (husband and wife), Jim Massie (Gerald's son by a prior marriage) and Suzette Howard (Virginia's 16-year-old daughter by a previous marriage) were abed in the Massie home situate in Ellington. Suzette was asleep in a basement bedroom located in the southeast portion of the dwelling. The bedroom had two windows of unknown size. The south window, covered by a screen, was open. When Jim was preparing for bed, he saw a Chevrolet automobile parked in the driveway leading from the house to "North-south Road." The car's parking lights were burning and its "motor was running." Jim heard "some voices coming from there." Although who owned the automobile was never proved, the questions asked and the answers given at trial assumed that defendant owned the vehicle. Nevertheless, defendant denied he had been in the car at any pertinent time.

Suzette was awakened by "a scraping or ripping noise at the [south] window." She "sat up in bed and listened[,] asked who was there [and] they [sic] said it was a friend." According to Suzette, the voice was that of a "male." The speaking person "said something to someone else later [and] I think I saw another person behind him, I'm not sure." After "[t]wo or three minutes," during which time Suzette had some unremembered conversation with the person or persons outside the window, she saw a naked foot sticking some six or eight inches through the window screen into the basement bedroom via an "L–shape [cut in the screen] about eight inches one direction, and about six the other." She could not "tell whether it was a male or female foot." After observing the naked foot, Suzette "ran out of the room and screamed." Suzette could not identify anyone who may have been outside of the opened window.

Responding to Suzette's scream, Gerald and Jim went to the basement and were given a curt critique of the foregoing. They went outside the house but found no one. Gerald found "one pair of [men's] pants [and] two boots . . . on a concrete slab at the north end of the house underneath the porch."

After dressing, Jim drove the Chevrolet up by the house, locked it and took the keys. Subsequently, Jim heard a noise 300 to 400 yards south of the house. Arming himself

with a "piece of pipe," he went to investigate. About 100 yards south of the house, Jim encountered defendant at an "apartment building." Defendant, "naked and intoxicated, . . . was carrying a small pillow [and] was rather incoherent." Over numerous objections, Jim testified that when he asked defendant "if he tried to enter the house and why," the defendant "[i]n substance" responded "that he had committed the act and his tone was apologetic [or] something in the nature he hadn't meant anything by it and he was sorry."

Directing defendant to stay where he was, Jim returned to the house and retrieved the trousers found there. Jim and his father returned to where defendant waited. With considerable difficulty, defendant donned the pants, wrong side out and backwards.

Six or seven years previously, Suzette (then nine or ten years old) had casually known defendant (age never shown) when he mowed the lawn for her (presumably) natural parents. Suzette had never "dated" defendant. Neither had she "ever associate[d] with him socially." She testified she had not seen defendant "that night." Subsequent night and daylight searches of defendant and the involved areas by various individuals failed to discover any "dangerous weapon" or any instrumentality which might have been employed to cut the screen, etc. We deem it reasonable to conclude, as defendant's and others' testimony indicated, that defendant was exorbitantly intoxicated at the times in question.

■ The presence of any part of an alleged burglar's body within the premises is enough entry to prove one essential element of a charge of burglary. *State v. Maddox,* 465 S.W.2d 607, 609[1] (Mo.1971); *State v. Watson,* 383 S.W.2d 753, 756[4] (Mo.1964); *State v. Tierney,* 371 S.W.2d 321, 323[3] (Mo.1963). Although there was no evidence of the size of the basement window opening or proof to indicate that the opening minus the screen was sufficiently large to admit

defendant into the house, nevertheless, based on the just-cited authorities, if we accept the jury's apparent finding that the naked foot stuck through the L-shaped cut in the screen was that of the defendant, we are constrained to the conclusion that there was proof of an entry.

■ However, mere entry does not itself constitute burglary. In this case it was necessary to prove that the entry was made to commit the felony of rape. To sustain such a charge, the proof must show beyond a reasonable doubt that defendant intended not merely to have sexual intercourse with the girl but also to use whatever force was necessary to overcome her resistance. *State v. Brown,* 217 S.W.2d 546, 548[5] (Mo. 1949); *Brown v. State,* 94 Tex.Cr.R. 140, 250 S.W. 170, 172 (1923); *Hays v. State,* 86 Tex.Cr.R. 469, 217 S.W. 938[3] (1920); *Sedgwick v. State,* 57 Tex.Cr.R. 420, 123 S.W. 702, 703–704 (1909); *Mason v. State,* 47 Tex.Cr.R. 403, 83 S.W. 689[1] (1904); *Mitchell v. State,* 32 Tex.Cr.R. 479, 24 S.W. 280, 281[1] (1893); *Walton v. State,* 29 Tex.App. 163, 15 S.W. 646, 647 (1890).[2] The intent with which an accused breaks and enters is an essential element of the offense of burglary and must be established by evidence beyond a reasonable doubt. *State v. Shipman,* 354 Mo. 265, 269, 189 S.W.2d 273, 275[2] (1945).

Pared to the bone, these are the facts: Suzette was awakened by a noise while abed in her basement bedroom. She engaged in a two or three minute innocuous conversation (at least she could not remember its context) with one or more unidentified male persons positioned outside the screened basement window. The size of the window's opening is unknown, but the later discovered L-shaped cut in the screen was of insufficient proportion to permit entry of a normal sized adult male. Upon espying a naked foot of unknown sex being put through the cut in the screen, Suzette forsook her bed, ran from the room and screamed. Posthaste, the possessor of the

2. As noted in *State v. Brown,* supra, 217 S.W.2d at 548, the rule as announced by the reported Texas cases "is the same as in" Missouri. See the later Texas case, *Baldwin v. State,* 153 Tex.Cr.R. 19, 216 S.W.2d 985, 986–987[1–3] (1949).

unadorned foot withdrew it from the opening and hied himself away. Subsequently, defendant, suffering the throes of extreme inebriety and accompanied only by a pillow, was discovered 100 yards from the allegedly burgled premises. Intoning his apologies and awaiting, as directed, the return of his captor, defendant with difficulty donned a proffered pair of pants wrong side out and backwards.

■ Albeit conceded that defendant may have desired sexual intercourse with Suzette, nothing appears of record to indicate that he was intent upon employing whatever degree of force which may have been necessary to accomplish his wants. When defendant's desires were apparently discovered by Suzette and she manifested a disliking therefor, defendant immediately withdrew his foot and fled. If defendant had intended to force himself upon Suzette in any event, situate and armed as he seemingly was, it appears incredible that he would have first engaged her in two or three minutes of harmless conversation and then put a naked foot through an insufficient opening in the screen to telegraph his desires. It does not appear that the means allegedly employed by defendant were adapted to secure the end desired in any event. We can only arrive at the defendant's intentions by his acts and conduct. Regardless of how reprehensible defendant's conduct may have been, the evidence does not disclose that he intended to commit the crime of rape at all costs.

As it is evident that the state presented all available evidence pertinent to the issues and failed to make a submissible case, the judgment below is reversed and the defendant is discharged.

All concur.

### Addendum

■ The state has filed a motion (taken with the case) to strike certain portions of defendant's brief on appeal because the involved points relied on were not raised in the motion for a new trial. As the motion relates to the claimed error regarding the

information, Rule 28.02, V.A.M.R., mandates that "[a]llegations of error respecting the sufficiency of the information . . . shall be considered upon an appeal although not raised in the trial court or preserved for review." In addition, if the evidence is insufficient to sustain the conviction, plain error affecting substantial rights is involved and we are required to note this sua sponte. Rule 27.20(c), V.A.M.R.; *State v. Potter*, 530 S.W.2d 268, 269[1] (Mo.App. 1975). Our disposition of the appeal, supra, renders the other portions of the state's motion moot. The motion is denied.