**STATE of Missouri,
Plaintiff-Respondent,**

**v.**

**Michael CARTER, Defendant-Appellant.**

**No. 14170.**

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 20, 1986.

David Robards, Joplin, for defendant-appellant.

William L. Webster, Atty. Gen., Lee A. Bonnie, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

MAUS, Judge.

By an amended information the defendant was charged with having committed burglary in the first degree by unlawfully entering the home of Scott Coleman "for the purpose of committing the crime of rape therein." A jury found him guilty. As a prior offender he was sentenced to imprisonment for eight years.

The following is a sketch of the facts. On September 8, 1984, Scott Coleman, his wife and four-year-old daughter were asleep in the upstairs bedrooms in their home in Webb City. An aquarium light in the front room illuminated the front room and the stairway. At approximately 5:00 a.m. Coleman was awakened by a loud crashing noise. After hearing another noise he headed downstairs to investigate. As Coleman reached the top of the stairway, he encountered the defendant, completely nude, standing on the landing halfway down the stairs. Coleman asked, "Who are you?" Defendant said a name which Coleman could not recall, but which was not the defendant's name. Coleman asked what defendant was doing in his house and the defendant replied he was not in Coleman's house. Defendant said he knew Coleman and knew another man by the name of Scott Shilkett. The defendant further stated that he had worked at a local firm and that Coleman knew him. Coleman was an electrician and was periodically away from home overnight. Coleman informed the defendant that he did not know him and ordered him out of his house. The defendant attempted to charge up the stairs past Coleman who grabbed and restrained the defendant.

Coleman took defendant downstairs, still restraining him, and ordered his wife to call the police. When the police arrived, Coleman was sitting on Carter on the downstairs couch. Defendant's clothes were found in a neat pile on the front porch. Entry had been gained through the back door, where a pane in the door was broken. Defendant had reached inside through the broken pane and unlocked two locks on the door. The defendant smelled strongly of alcohol and his eyes were glazed. There was a cut on his nose and blood on his lip. He did not at the time explain his presence.

However, the defendant testified to explain his actions and condition. He related the following. He had been to a bar and had several drinks. He met a young woman named Gretchen and went with her to her home. Defendant could not recall where this house was located. Gretchen's boyfriend arrived when defendant was in bed with Gretchen. An argument ensued. The boyfriend got a crowbar and struck defendant in the back of the head. The boyfriend chased defendant for several blocks with the crowbar. The defendant broke into the Coleman home to escape him. He dropped his clothes on Coleman's front porch while struggling with his assailant. He fled to the back porch and entered to get away.

The defendant states his first point is a long-winded way of saying the evidence is insufficient to sustain the conviction. By argument, he makes it clear his complaint is the insufficiency of the evidence to establish his intent to commit rape.

It is significant the defendant does not argue the insufficiency of the evidence is established by his attempted explanation. That explanation was refuted by the facts, including the following. In fleeing from an assailant armed with a crowbar, he sought refuge in the only house in the area sur-

rounded by a chain link fence. The defendant's clothes were neatly stacked on the front porch. The windowpane on the back door was broken with a paint can. Two locks on the inside of that door were unlocked. The defendant gave a fictitious name. When apprehended, he offered no explanation for his nudity and actions. He was not sweaty or out of breath. The jury concluded the tendered explanation was false. Indeed, it was not a reasonable hypothesis of the defendant's innocence. The purported explanation need be given no further consideration.

The defendant does argue the insufficiency of the evidence is established by the irrationality of his actions. He cites his intoxication and his attempt to proceed after being stopped by Scott Coleman. It matters not that the formation of an intent to rape was the product of a brain befuddled by alcohol. Nor does it matter that defendant's actions in furtherance of a preconceived plan were not initially deterred by what would deter a more sensible individual.

"The evidence need not establish intent as a matter of law; it is sufficient that it authorizes such a finding by the jury." *State v. Roden*, 674 S.W.2d 50, 53 (Mo.App. 1984). "The intent element of burglary is generally not susceptible to direct proof." *State v. Mitchell*, 689 S.W.2d 143, 146 (Mo. App.1985).

From the evidence, the jury could have found the mother and daughter were often at home at night alone. This fact was known to the defendant. He entered the premises through a chain link fence. He removed his clothes and stacked them neatly on the front porch. He forced entry through the backdoor. He was proceeding to the bedrooms of the mother and daughter when his progress was interrupted. He persisted in his effort to reach those bedrooms.

This court must accept all reasonable inferences from the evidence that supports the verdict of the jury. *State v. Brown*, 660 S.W.2d 694 (Mo.banc 1983). The jury could have reasonably inferred and found that the defendant intended to have sex with someone in the Coleman house. No other credible reason is suggested for the removal of his clothing. The jury could have likewise found the defendant intended to do so by force. He used force to enter the dwelling. He continued his use of force by initially attempting to pass the husband. There is no suggestion of any basis for the defendant to imagine that he could engage in consensual sex.

The defendant relies upon *State v. Asberry*, 559 S.W.2d 764 (Mo.App.1977). It is significant the court in that case held that an attempted entry by a naked man into a room, occupied by a young woman, provided the basis for finding that he intended to have sexual intercourse with the occupant. Otherwise, that case is not controlling. Asberry was acquainted with the occupant. He conversed with the occupant before attempting entry and identified himself as a friend. The only entry was by his foot. When the occupant screamed, defendant immediately fled. He offered apologies, not an explanation that was determined to be false.

This case is more comparable with *State v. Shroyer*, 104 Mo. 441, 16 S.W. 286 (1891), in which a defendant entered a room occupied by five children, placed his hand on one and began to unfasten his pants. It is also comparable with *State v. Smith*, 80 Mo. 516 (1883), in which the defendant entered a bedroom where a woman, her husband and their small child were sleeping. He was discovered on his knees, his hands resting on each side of the victim and clad in a shirt. It was in that case the court queried, "What was he there for? Certainly not to say his *pater noster*." *State v. Smith*, supra, at 519 (emphasis in original). In any event, under the circumstances in evidence, when a naked man forcibly enters a home at 5:00 a.m., occupied by a mother and daughter, it is not necessary that he touch or assault one of them or expressly announce a purpose of rape as a prerequisite for a jury to reasonably infer that he

intended to commit rape. The defendant's first point has no merit.

■ The defendant's second point is that the amended information was insufficient because it used the generic term "rape" and did not allege the elements of that crime and whether he intended to commit forcible or statutory rape. The amended information followed the format of MACH–CR 23.50. The amended information was not required to allege the elements of the object crime. *State v. Reese*, 687 S.W.2d 635 (Mo.App.1985); *State v. Mitchell*, supra.

■ The defendant's third point is that the verdict directing instruction was erroneous because it gave the jury a roving commission to find him guilty. This instruction was patterned upon MAI–CR 2d 23.50. It submitted the issue of whether or not the defendant entered for the purpose of rape. The instruction defined rape in the terms of § 566.030, RSMo Cum.Supp. 1984. To support this point, the defendant argues the instruction directed a verdict of guilty if the jury found he intended to have sexual intercourse by forcible compulsion with the mother or daughter or consensual sexual intercourse with the four-year-old daughter. A finding of either was a sufficient basis for a verdict of guilty. The possibility of alternative findings of such criminal intent defined by the same statute was not error. Cf. *United States v. Freeman*, 619 F.2d 1112 (5th Cir.1980); *James v. State*, 698 P.2d 1161 (Alaska 1985); *State v. Dixon*, 655 S.W.2d 547 (Mo.App. 1983), cert. denied, 464 U.S. 1072, 104 S.Ct. 982, 79 L.Ed.2d 219 (1984); *State v. Danforth*, 654 S.W.2d 912 (Mo.App.1983); *State v. Baldwin*, 101 Wis.2d 441, 304 N.W.2d 742 (1981).

■ The defendant's last point is that "the trial court erred in failing to grant defendant's motion for remand for preliminary hearing after the state filed its amended information changing the object crime of the alleged burglary from stealing to rape ...." The defendant cannot establish a basis for reversal by this point. The defendant did not file a motion for remand.

When the defendant appeared before the circuit court for arraignment thereon, his counsel objected to the filing of the amended information because it changed the elements of the offense. The trial court announced, "Well, certainly, if that's the case, you can attack it by written motion later." The defendant's counsel then stated, "We'll waive reading of the information and enter a plea of not guilty." He later orally objected to the filing because he had not been afforded a preliminary hearing on the amended information.

At an early date it was held "the record discloses that they were formally arraigned and pleaded the general issue of not guilty without calling the attention of the court to the fact that they had not been given a preliminary examination. Under such circumstances the right to such examination was waived." *State v. Rozell*, 225 S.W. 931, 931–932 (Mo.1920), 16 A.L.R. 400 (1922). Also see *State v. Neal*, 350 Mo. 1002, 169 S.W.2d 686 (1943). That principle is particularly applicable in this case. After the arraignment mentioned, the defendant filed several motions, entered into an agreement for a place of trial, and made no further mention of a lack of a preliminary hearing. No motion for remand was made or filed. Cf. *State v. Pippey*, 335 Mo. 121, 71 S.W.2d 719 (1934). The defendant's last point is denied and the judgment is affirmed.

PREWITT, P.J., and HOGAN and FLANIGAN, JJ. concur.